[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13532
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-20169-KMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YUDEISY LOPEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 22, 2011)

Before TJOFLAT, CARNES, and FAY, Circuit Judges.

PER CURIAM:

Yudeisy Lopez appeals her convictions and sentences for: (1) conspiracy to

possess access device-making equipment, in violation of 18 U.S.C. § 1029(b)(2);

(2) possession of access device-making equipment, in violation of 18 U.S.C.

§ 1029(a)(4); and (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). First, she contends that the district court deprived her of her right to an impartial jury when it denied her requests to strike two jurors from the panel for cause and when it refused to grant her additional peremptory challenges. Second, she contends that the district court erred in denying her motion to suppress evidence seized during a search of her car because her consent was involuntary. Third, she contends that the court erred in denying her request for a minimal or minor role sentence reduction because there was no evidence that she installed or possessed access device-making equipment or had any knowledge of the volume of fraudulently obtained credit card information possessed by her co-conspirators. And fourth, she contends that her 90-month total sentence is substantively unreasonable.

I.

In 2009 Ariel Pelier, Lopez's live-in boyfriend, was arrested for illegally possessing access device-making equipment, which is also known as "skimming" equipment and is used to steal credit, bank, or debit card information.[1] The United States Secret Service later began surveillance of Pelier. In late February and early

---

[1] "Skimming" refers to the unauthorized retrieval of magnetic numbers from the magnetic strip of a credit, bank, or debit card in order to re-use them on another card.

March 2010, Secret Service agents tracked Pelier, Lopez, and another suspect, Matos Pinon, as they drove through several southeastern states, installing and removing skimming and other equipment from ATMs.  Although Lopez never handled the equipment during the trip, she was present and a bank camera recorded her illegally withdrawing funds from a Wachovia bank account.  Agents arrested all three of them in Florida.

At their Miami field office, agents questioned the three separately.  Pelier cooperated with the agents, giving them consent to search his truck and home where agents discovered evidence, including more than 3,800 credit card numbers.  Lopez was read her Miranda rights, and agents searched her car, which was located at the home she shared with Pelier.  In her car agents discovered incriminating evidence related to the conspiracy, including credit card track data, which is the information encoded on the card's magnetic strip to identify valid credit cards.  A grand jury indicted Lopez and the others on the three charges related to the skimming conspiracy.  Pelier pleaded guilty.  Lopez was tried with Pinon.

Before the trial began Lopez moved to strike two potential jurors for cause because they stated during voir dire that they had been the victims of crimes, and one of them had been an identity theft victim.  Both jurors attested that the earlier

incidents would not affect their decision in Lopez's case, and the district court denied Lopez's request to remove them for cause. Lopez had no peremptory challenges left to exclude them.

During the trial Lopez moved to suppress the evidence agents seized from her car, arguing that she either did not consent to the search or that if she did, her consent was not voluntarily given. Out of the presence of the jury, the district court held a suppression hearing and denied the motion. The only witness to testify at that hearing, a federal agent, testified that Lopez did verbally consent, but that she refused to sign the written consent form.

The jury found Lopez guilty on all three charges, and the district court entered judgment on the verdict. The presentence investigation report set Lopez's base offense level at 6. The PSI recommended and the district court imposed a 16-level enhancement because she was responsible for a loss greater than $1 million but less than $2.5 million. Because of her role in the conspiracy, she was liable for the conduct of her co-conspirators, making her accountable for $1.9 million in losses, calculated based on multiplying the $500 statutory offense loss minimum by 3,899, the total amount of credit card numbers seized. She received another two-level enhancement for relocating their fraudulent scheme to another jurisdiction in order to evade law enforcement and another two levels were added

4

for obstructing justice. The district court calculated her guidelines range as 63 to 78 months, and it sentenced her to 66 months. The sentence for the aggravated identity theft conviction was 24 months, the statutory maximum which is required to be imposed consecutively, see 18 U.S.C. § 1028A(a)(1), making her total sentence 90 months.

## II.

First, Lopez contends that the district court violated her Sixth Amendment right to an impartial jury by denying her request to disqualify two purportedly biased jurors and for refusing to grant her additional peremptory challenges. We review both of these rulings only for abuse of discretion. See United States v. Hurley, 746 F.2d 725, 727 (11th Cir. 1984); United States v. Romero, 780 F.2d 981, 984 (11th Cir. 1986). "[T]he party challenging . . . a refusal [to strike a juror for bias] must demonstrate that the juror in question exhibited actual bias: That is, either an express admission of bias, or proof of specific facts showing such a close connection to the circumstances of the case that bias must be presumed." Id. A juror's general knowledge or personal experience with a particular criminal act by itself is not enough to establish a bias against a particular defendant. See United States v. Tegzes, 715 F.2d 505, 507 (11th Cir. 1983).

Lopez argues that juror Kasey Smith should have been disqualified because he admitted during voir dire that he had been the victim of identity theft more than ten years ago. Lopez argues that juror Marjorie Davidson should have been disqualified because she was a burglary victim who was unhappy with the fact that the juvenile burglars were not prosecuted.[2] However, being a victim of criminal acts did not disqualify them from serving. See Tegzes, 715 F.2d at 507. Both Smith and Davidson stated that their earlier experiences with crime would not affect their decision in Lopez's case. "The jurors . . . took their oath, and absent evidence to the contrary, we must presume that they were fair and impartial, as indeed they swore to be." United States v. Khoury, 901 F.2d 948, 955 (11th Cir. 1990). Lopez did not present any evidence to the contrary.

Lopez also argues that the district court erred by not granting her additional peremptory challenges so that she could strike Smith and Davidson. In non-capital felony cases, the government is entitled to six peremptory challenges, and the defense, whether a single defendant or multiple codefendants, is entitled to ten. Fed.R.Crim.P. 24(b)(2). The rule states, however, that in a case such as

---

[2]Lopez also objects to Davidson because she served on a grand jury fifteen years ago. However, Lopez failed to fully brief or argue how that 15-year-old grand jury service would disqualify Davidson from serving in Lopez's trial. As such, she has waived that argument. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 ("If an argument is not fully briefed . . ., evaluating its merits would be improper . . . .").

Lopez's which included multiple defendants, a "court may allow additional peremptory challenges." Fed.R.Crim.P. 24(b) (emphasis added). Despite that rule's language placing the trial court's decision to deny additional peremptory challenges entirely within its discretion, Lopez seeks to turn the "may" language into a "must." The district court is given discretion about whether to allow additional peremptory challenges, and Lopez has failed to show that it abused its discretion here. See United States v. Bryant, 671 F.2d 450, 455 (11th Cir. 1982) (noting the district court's "wide discretion" in "regulating the exercise of peremptory challenges").

## III.

Second, Lopez contends that the district court erred by denying her motion to suppress evidence from the warrantless search of her car. She argues that her consent to the agents' search of her car was not freely and voluntarily given, and that she "merely acquiesced to a show of authority."

Because the voluntariness of consent is a question of fact, we will not disturb a district court's finding on that issue unless it was clearly erroneous. United States v. Zapata, 180 F.3d 1237, 1240–41 (11th Cir. 1999). "We accord great deference to the district court's credibility determinations." United States v. Gregg, 179 F.3d 1312, 1316 (11th Cir. 1999); see also United States v. Izquierdo,

7

448 F.3d 1269, 1278 (11th Cir. 2006) (observing the deference and "due regard" given to the district court's assessment of a witness's credibility (quotation marks omitted)) .

The only witness to testify on this issue was a Secret Service agent who said Lopez gave oral consent for agents to search her vehicle. Although Lopez argued to the district court that her consent was not voluntary, she offered no evidence of that, giving the district court no reason to discredit the agent's testimony. The district court did not clearly err.

## IV.

Third, Lopez contends that the district court erred in not adjusting her sentence downward to account for her purported minor role in the criminal conspiracy. Lopez argues that agents found just 39 credit card numbers in her possession out of the more than 3,800 seized during the investigation. Moreover, Lopez argues that the government failed to prove that she participated in all (or most of the more egregious) activities of the conspiracy, such as placing the skimming devices on ATM machines or encoding credit cards on a computer.

A district court's determination of whether a defendant qualifies for a role adjustment is a finding of fact that we review only for clear error. United States v. De Varon, 175 F.3d 930, 934, 946 (11th Cir. 1999) (en banc). Where there is

"ample evidence in the record to support [the district court's] determination that the defendant did not play a minor role in the offense," we are unlikely to find clear error. See id.

The government presented evidence that Lopez unlawfully withdrew funds more than once, and that she was present when one co-conspirator installed skimming devices on ATMs, and that she willfully participated in the conspiracy over an extended period of time, as opposed to a single isolated incident, and that she benefitted from the proceeds of the conspiracy. The district court did not clearly err in its conclusion that Lopez's conduct was not minimal or minor. See De Varon, 175 F.3d at 944 ("Simply put, a defendant is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants.").

IV.

Fourth, Lopez argues that her 90-month sentence was substantively unreasonable and failed to comply with the purposes of sentencing as provided in 18 U.S.C. § 3553(a). We review only for abuse of discretion the substantive reasonableness of a sentence. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010). To determine if a sentence is substantively unreasonable, "we must, as the Supreme Court has instructed us, consider the totality of the facts and

circumstances." United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010).

"[O]rdinarily we . . . expect a sentence within the Guidelines range to be reasonable." United States v. Talley, 431 F.3d 784, 788 (11th Cir.2005). We will vacate a sentence for substantive unreasonableness "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Irey, 612 F.3d at 1190 (quotation marks omitted). "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors." Tome, 611 F.3d at 1378.

Lopez's total sentence was not unreasonable. First, her 24-month sentence on Count 3 was mandatory under the statute, which also required it to be consecutive. See 18 U.S.C. § 1028A(a)(1). Lopez wanted to be sentenced at the lower end of the guidelines range, and her 66-month sentence for Counts 1 and 2 was near the lower end of the applicable guidelines range. In addition, that 66-month sentence was well below her statutory maximum for Counts 1 and 2. See 18 U.S.C. § 1029(a)(4) (maximum sentence of 15 years); 18 U.S.C. § 1029(b)(2) (maximum sentence of 7.5 years).

As district court found, the evidence of Lopez's culpability over a sustained period of time was "overwhelming." The district court also concluded that Lopez: (1) benefitted from the proceeds of the crime; (2) was responsible for the reasonably foreseeable acts of her co-conspirators; and (3) was likewise responsible for losses that resulted from 3,899 illegally obtained credit card numbers. Moreover, Lopez admitted that she withdrew funds more than once. The district court did not abuse its discretion in imposing the 90-month sentence.

V.

Although neither Lopez nor the government addresses the fact that there is a typographical error in the judgment of conviction, we raise <u>sua</u> <u>sponte</u> the issue and remand with instructions to correct the error. See United States v. Massey, 443 F.3d 814, 822 (11th Cir. 2006) ("[I]t is fundamental error for a court to enter a judgment of conviction against a defendant who has not been charged, tried, or found guilty of the crime recited in the judgment." (quotation marks and citation omitted)).

The judgment in this case indicates that the conviction for Count 3 was for a violation of 18 U.S.C. § 1028(a)(1). However, a review of the indictment, jury instructions, and sentence hearing transcript indicates that Lopez's conviction on Count 3 was actually for a violation of 18 U.S.C. § 1028A(a)(1). Accordingly, we

11

affirm Lopez's convictions and sentence but vacate and remand for the limited purpose of correcting the clerical error in the judgment with respect to Count 3. See Massey, 443 F.3d at 822.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**